KNIGHTSVILLE LOAN CORPORATION *vs.* BANKERS INDEMNITY INSURANCE COMPANY.

MAY 23, 1940.

PRESENT: Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of assumpsit, brought to recover the sum of $1500 under a policy issued by the defendant to the plaintiff. The case was tried in the superior court to a jury, which returned a verdict for the defendant. The plaintiff duly filed a motion for a new trial, which motion was granted by the trial justice. The case is now before this court on the defendant's single exception to that decision.

The policy in question is described thereon as a "Combination Robbery Policy". By its terms the defendant agreed, among other things, to indemnify the plaintiff for all loss of money up to $1500, occurring outside the latter's premises, and occasioned by robbery or attempt thereat from a custodian between certain specified hours. The term "robbery" as used in the policy is defined therein. The defendant does not question that the policy was in full force and effect on December 19, 1935, the date the plaintiff claims that the occurrence in issue, resulting in an alleged loss, took place; that the plaintiff had paid the premium due on

said policy; that proof of such loss had been duly made; and that the plaintiff had cooperated with the defendant in connection with investigating said loss. The defendant also admits that on the morning of December 19, 1935, one Ruggieri, who had been office manager of the plaintiff's business for about thirteen years, drew from a bank in Providence the sum of $1500 in bills for use in that business.

According to the plaintiff's evidence, this money was deposited by Ruggieri in an envelope which he placed in his coat pocket. He was then driven by one Luca Merino, a son of an officer of the plaintiff corporation, and about nineteen years of age, to the office in Providence of one D'Errico, a broker, where a very brief stop was made to enable Ruggieri to discuss with the former a matter not connected with the plaintiff's business. It appears in evidence that no part of the $1500 was left with D'Errico. Ruggieri then proceeded with Merino, who was driving a small truck owned by his father, in the direction of Knightsville for the purpose of going to the plaintiff's office there.

On the way, while passing through a sparsely-settled section of Cranston, an automobile containing three men forced Merino's truck, by cutting sharply in front of it, to the side of the road, and then stopped in front of or beside the truck, which, in turn, was compelled to stop in order to avoid striking the automobile and a pole by the side of the road. Two men, each armed with a revolver, got out of the said automobile and came back to Merino's truck, one on each side thereof. They threatened Merino and Ruggieri with the revolvers and demanded money. There is testimony tending to show that at this time Merino was struck in the mouth and Ruggieri on the head. The man on the right side of the truck, where Ruggieri was sitting, then reached into the truck, removed the envelope from Ruggieri's pocket and took the money in question, amounting to $1500. The two men then returned to their automobile and were rapidly

driven away by the third man. The number on the registration plates on the automobile was noted by Merino, but it later developed that the plates had been stolen. The police in Cranston and the defendant's agent in Providence were promptly notified of the occurrence by Merino and Ruggieri. The men were never apprehended.

That such a "holdup", as several witnesses described the occurrence, took place was substantiated by the testimony of two apparently disinterested witnesses who were in a milk truck not far from the scene. The defendant, however, contends that the verdict of the jury was supported by the weight of the evidence, and that the trial justice should not have granted the plaintiff's motion for a new trial, because the latter had failed to prove by a preponderance of the evidence that a robbery was committed by the actual taking of the money from Ruggieri during the "holdup", so-called. The defendant argues that it did not have the burden of showing that the robbery did not take place, what became of the $1500, whether or not Ruggieri was guilty of embezzlement, or why the automobile was not located and the men apprehended. Finally, the defendant maintains that the trial justice misconceived the evidence in making his decision on the plaintiff's motion.

We have examined the evidence and considered the decision of the trial justice. Granting the defendant's contention that it was not obliged to make an affirmative defense, and that the burden of proof to show the robbery remained upon the plaintiff, we find nothing to indicate that the trial justice misconceived the evidence or the issues raised thereby. His reference in his decision to the nature of the defendant's case was proper, and does not support the defendant's contention that he had misconceived the evidence.

Undoubtedly, the defendant is correct in its position that the fundamental question was whether or not a robbery

was perpetrated by the taking of the money from the person of Ruggieri. Proof of such a taking rested to a large degree upon the testimony of Ruggieri. The defendant met this testimony, and that of other witnesses for the plaintiff, by introducing in evidence, for the purpose of affecting their credibility, inconsistent and contradictory statements they had previously made concerning the occurrence in question. Some of the inconsistencies and contradictions related to immaterial matters, while others were of more importance. The defendant, in the same manner, showed that certain of the plaintiff's witnesses contradicted each other in several material instances.

This state of the evidence raised a question, first for the jury and later for the trial justice to determine, as to the credibility of the plaintiff's witnesses, especially Ruggieri. Both the jury and the trial justice had the advantage of seeing and hearing these witnesses testify. The jury evidently, by their verdict, decided that question in the defendant's favor. However, under our well-established rule, it became the duty of the trial justice, in considering the plaintiff's motion for a new trial, to himself weigh the evidence and pass upon the credibility of the witnesses, in the exercise of his independent and experienced judgment, not for the purpose of merely substituting his opinion for that of the jury's, but to determine whether their verdict responded to the real merits of the controversy, and did substantial justice between the parties.

The trial justice, in the instant case, apparently performed his duty in this respect. In so doing, he found, in positive language, that the verdict was against the weight of the evidence and did not do substantial justice, but, in fact, amounted to a gross miscarriage of justice. Upon consideration, we cannot say that this decision of the trial justice was clearly wrong. Such being the case, under our settled rule, we do not disturb his decision.

The defendant has also suggested that we should in this case apply the rule in regard to proof set out in the case of *Paradise* v. *Rick*, 63 R. I. 207, 7 A.2d 713, which was an action to recover against the estate of a deceased person on a disallowed claim. In our opinion, the instant case and that case are not sufficiently analogous so that the reasoning which prompted the holding in the latter case should be applied in the present case. Moreover, here the plaintiff's evidence is not inherently self-contradictory or opposed to established physical facts, as was the situation in regard to some of the evidence in the case cited.

The defendant's exception is, therefore, overruled and the case is remitted to the superior court for a new trial.

*Edward M. Sullivan, John J. Sullivan, and Albert A. Soreiro,* for plaintiff.

*Fergus J. McOsker,* for defendant.

